

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHILADELPHIA INDEMNITY )
INSURANCE COMPANY, ) No. 11 C 1710
 )
Plaintiff, )
 ) Judge John J. Tharp
v. )
 )
1801 W. IRVING PARK, LLC, and )
BOARD OF MANAGERS OF )
METRO NORTH CONDOMINIUM )
ASSOCIATION, )
 )
Defendants.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Philadelphia Indemnity Insurance Company ("PIIC") filed a declaratory judgment action against Defendants 1801 W. Irving Park, LLC ("1801") and the Board of Managers of Metro North Condominium Association (the "Board")[1] seeking a declaration that PIIC has no duty or obligation to defend or indemnify 1801 for the underlying lawsuit brought by the Board against 1801 captioned, *Board of Managers of Metro North Condominium Association v. 1801 W. Irving, LLC*, Case No. 09 L 12485, Circuit Court of Cook County Law Division (the "*Irving*" lawsuit). 1801 moved for

---

[1] The complaint seeks no relief against the Board and states that the Board is "a nominal but interested party to this declaratory judgment action," which has been joined solely so that it may be bound by any judgment rendered in this matter. Doc. 21 ¶ 5. Because the Board is only a nominal party, PIIC's potentially troublesome allegations regarding the Board's citizenship, including PIIC's allegations "upon information and belief" and its failure to clearly allege the Board's state of incorporation and principal place of business, do not divest the Court of subject matter jurisdiction. See *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991) ("A nominal defendant is a party who may be joined as a party to aid recovery without an assertion of subject matter jurisdiction because he or she holds and has no ownership interest in property that is the subject matter of the litigation.").

1

summary judgment on the question of PIIC's duty to defend in the *Irving* suit and PIIC filed a cross motion for summary judgment asking the Court to declare that it has no defense obligations to 1801. For the reasons set forth below, 1801's motion is denied and PIIC's motion is granted. Although the Court concludes that PIIC would otherwise owe a duty to defend 1801 in the *Irving* law suit, 1801's unreasonable delay in notifying PIIC about the *Irving* lawsuit in violation of the relevant insurance policies defeats its claim and the Court enters judgment finding that PIIC has no duty to defend or indemnify[2] 1801 for the allegations directed against 1801 in the *Irving* lawsuit.

## BACKGROUND

1801 was the developer of a property known as the Metro North Condominiums ("Metro North"). 1801's Statement of Uncontested Facts ("Doc. 17") ¶ 13. It also managed the affairs of the Metro North Condominium Association before control was turned over to the individual unit owners. *Id.* PIIC issued two virtually identical commercial general liability insurance policies (the "Policies"), the first effective from September 2006 through September 2007, and the second effective from September 2007 through September 2008. The Policies covered two named insureds: Metro North Condo Association and 1801.[3] The "Common Policy Declarations" page in each of the Policies contains a notation stating: "Business Description: Condominium Association." *Id.* ¶¶

---

[2] The parties' summary judgment motions discuss only PIIC's duty to defend, not its duty to indemnify. But because the duty to defend is broader than the duty to indemnify, the Court's conclusion that PIIC has no duty to defend 1801 necessarily means that PIIC also has no duty to indemnify. *See Crum and Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 398, 620 N.E.2d 1073, 1081 (Ill. 1993) ("Clearly, where there is no duty to defend, there will be no duty to indemnify.").

[3] The Policies make clear that 1801 is a named insured. They explicitly list "1801 West Irving LLC" as a "Named Insured" in the Common Policy Declarations. Doc. 25-2 p. 9. They further state that an entity "designated in the Declarations as . . . [a] limited liability company [is] an insured." *Id.* at 45.

2-3. The Policies do not contain any express exclusion limiting coverage to acts committed in the course of the activity described in the "Business Description" section of the declarations. *Id.* ¶ 20.

The "insuring agreement," a section found in each Policy, states that the applicable coverage extends to "property damage" caused by an "occurrence." *Id.* ¶ 17. "Property damage" is defined as "[p]hysical injury to tangible property." *Id.* ¶ 19. The Policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* ¶ 18. An exclusion to the Policies precludes coverage for "property damage" expected or intended from the standpoint of the insured. PIIC's Statement of Uncontested Facts ("Doc. 25") ¶ 3.

The Policies also contain a condition requiring the insured to "see to it that [PIIC is] notified as soon as practicable of an 'occurrence' or an offense which may result in a claim . . ." and that "[i]f a claim is made or 'suit' is brought against any insured, [it] must . . . [n]otify [PIIC] as soon as practicable." *Id.* ¶ 4.

The complaint in the *Irving* lawsuit alleges that 1801 committed numerous acts, errors, and omissions in developing Metro North and in managing the affairs of the Metro North Condominium Association. *Id.* ¶ 13. Five of the six counts of the *Irving* lawsuit contain allegations against 1801 in its capacity as developer of Metro North; the other count is directed against 1801 in its capacity as a member of the condominium association.

The initial *Irving* complaint was filed on October 21, 2009. Doc. 17 ¶ 9. A Second Amended Complaint was filed on August 20, 2010, adding James C. Jaeger, 1801's managing member and sole employee, as an individual defendant. Ten days later,

3

on August 30, 2010, Jaeger's attorneys (who also represent 1801 in the Irving case) tendered defense of the suit to PIIC. In November 2010, Jaeger's counsel clarified that the tender was being made on behalf of both Jaeger and 1801. On November 22, 2010, PIIC denied coverage as to Jaeger. On March 8, 2011, counsel for 1801 asked PIIC for a decision on 1801's tender of the *Irving* action. PIIC denied coverage as to 1801 on March 10, 2011, and thereafter filed the instant declaratory judgment action.

## LEGAL STANDARD

A party is entitled to summary judgment if all the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When considering a summary judgment motion, the Court construes all facts and reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). Summary judgment is proper when the pleadings, discovery, and disclosures establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Winsley v. Cook Cnty.*, 563 F.3d 598, 602-03 (7th Cir. 2009). A genuine dispute as to a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001).

Under Illinois law, "[t]o determine if an insurer has a duty to defend the insured, the court must compare the allegations in the underlying complaint to the relevant provisions of the insurance policy." *Universal Underwriters Ins. Co. v. LKQ Smart Parts, Inc.*, 2011 IL App (1st) 101723 ¶ 13, 963 N.E.2d 930, 937. "If an underlying complaint alleges facts within or potentially within coverage, an insurer is obligated to

4

defend its insured even if the allegations are groundless, false or fraudulent." *Illinois Tool Works, Inc. v. Commerce and Indus. Ins. Co.*, 2011 IL App (1st) 093084 ¶ 48, 962 N.E. 2d 1042, 1056. An insurer may not justifiably refuse to defend litigation against its insured unless it is clear from the face of the underlying complaints that the allegations do not state facts which bring the case potentially within the policy's coverage. *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 73, 578 N.E.2d 926, 930 (Ill. 1991). Moreover, when the underlying complaint alleges "several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy." *Id.*; *Pekin Ins. Co. v. Pulte Home Corp.*, 404 Ill. App. 3d 336, 340, 935 N.E.2d 1058, 1062 (Ill. App. Ct. 2010). And insurance policy provisions that limit or exclude coverage "will be interpreted liberally in favor of the insured and against the insurer." *Pekin Ins. Co. v. Wilson*, 237 Ill.2d 446, 456, 930 N.E.2d 1011, 1017 (Ill. 2010) (quoting *American States Ins. Co. v. Koloms*, 177 Ill.2d 473, 687 N.E.2d 72 (Ill. 1997)). "A court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Id.*

## DISCUSSION

PIIC raises four independent grounds for its request for declaratory judgment. Count I of PIIC's Second Amended Complaint alleges that the Policies restrict coverage for 1801 to only its actions as a "Condominium Association." Count II alleges that the Metro North building is 1801's "work" or "product," and that the Policies therefore exclude coverage for damage to the building. Count III alleges that 1801's conduct in the *Irving* lawsuit was intentional, and therefore outside of the definition of an "occurrence"

that is a prerequisite to coverage under the Policies, and that any damage was expected or intended by 1801, a fact that would also eliminate coverage. Finally, Count IV alleges that 1801 failed to provide notice of the *Irving* lawsuit "as soon as practicable," and therefore that coverage is not available to 1801.

**Count I – The Policies' "Business Description" Does Not Limit Coverage.**

In Count I of its Second Amended Complaint, PIIC alleges that the "Business Description" included in the Policies precludes coverage for the *Irving* lawsuit. The question whether a business description in an insurance policy, standing alone, can limit the coverage available to the named insured appears to be a question of first impression in Illinois (neither the parties, nor the Court, have found a case under Illinois law that addresses this question). Applying New York law, however, the Court of Appeals for the Second Circuit has held that a business description in a Commercial General Liability policy's declarations page does not restrict the available coverage absent a specific exclusion to that effect. *Mt. Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232 (2d Cir. 2002). Finding the reasoning of *Mt. Vernon* to be persuasive, the Court holds that the specified business description of "condominium association" does not on its own limit the coverage available under the Policies to only those activities of 1801 that relate to its status as manager and/or member of a condo association.

In *Mt. Vernon*, an insured obtained a general liability insurance policy that stated that its "Business Description" was "Carpentry." 277 F.3d at 234. The insured was named as a defendant in a lawsuit filed on behalf of an individual who was killed at the insured's renovation site, but the insurer declined to defend the suit on the grounds that the insured was not engaging in carpentry at the time of the incident. *Id.* at 235-36. Rather, the insurer claimed that the insured was "acting in a supervisory capacity." *Id.* at

236. The Second Circuit found the insurer's interpretation limiting coverage to carpentry operations to be "nowhere apparent in the plain meaning of the words chosen by the parties." *Id.* at 237. The insurer argued that the parties intended for the policy to cover only risks related to carpentry, but the Court found that argument to be "contradicted by the absence of any limiting language in the insurance policy." *Id.* In the absence of such limiting language, the court held that the "business description" contained within the policy did not limit coverage. *Id.* at 239.

Here, like in *Mt. Vernon*, the Policies contain a "Business Description" but no other language limiting coverage to acts coming within that business description. "The limitation argued for by [PIIC] is by no means stated in clear and unmistakable language, and no reasonable interpretation can make it so." *Id.* at 239. The Policies fail to provide that the Business Description in any way defines or limits the covered risks. If PIIC intended to limit its coverage to only those actions taken by 1801 in its capacity as a "Condominium Association," it should have specifically said so. *See, e.g., Great Divide Ins. Co. v. Carpenter*, 79 P.3d 599, 618 (Alaska 2003) ("[t]his insurance does not apply to 'bodily injury,' . . . for operations which are not classified or shown on the Commercial General Liability Coverage Declarations"); *Ruiz v. State Wide Insulation and Const. Corp.*, 269 A.D. 2d 518, 519 (N.Y. App. Div. 2000) (policy "limited the operations from which a claim could arise to those described in the schedule of insurance"); *Harkless v. Sylvester*, 961 So.2d 535, 537 (La. Ct. App. 2007) ("We will only pay sums that insured becomes obligated to pay as damages . . . arising out of the operations of the business described below. Business Description: JAZZ LOUNGE").

7

PIIC cannot point to evidence sufficient to show that 1801 agreed that its actions as a developer would be excluded from coverage under the Policies.[4] To the contrary, after noting that an entity designated in the Declarations as an LLC is an insured, the Policies go on to state that coverage extends to the members and managers of an LLC, but they expressly limit that coverage for the members and managers to liabilities arising "with respect to the conduct of [their] business." There is no similar limitation applicable to the LLC itself, however, and the fact that the Policies treat the scope of coverage for members of the LLC differently than that of the LLC itself strongly rebuts PIIC's contention that the LLC's coverage was similarly limited.

Nonetheless, PIIC argues that the parties did not contemplate that the Policies would cover liabilities incurred by 1801 in its capacity as developer, and points to evidence outside of the Policies—namely, the application for the original policy, to support its contention. PIIC points principally to the insurance application's "SCHEDULE OF HAZARDS," where the only hazard identified is:

---

[4] PIIC does point out that the Policies contain an endorsement entitled "ILLINOIS CHANGES – CONDOMINIUMS" that could be read to exclude coverage for 1801's actions as developer. The endorsement states, in relevant part:

**Section II – Who Is An Insured** is amended to include the following as an insured: The developer in the developer's capacity as a unit owner. . . . However, the insurance afforded with respect to the developer does not apply to liability for acts or omissions as developer.

Section II of the Policies clearly indicates that 1801 is an insured because it is designated as such in the Declarations and the ILLINOIS CHANGES – CONDOMINIUMS endorsement does not negate that. The Policies are ambiguous as to whether the endorsement excludes coverage for 1801's liability as a developer. Conversely, the endorsement might instead be designed only to *expand* the definition of an insured to include not only full coverage to the named insureds (like 1801) but *also* some coverage to the developer (here, also 1801) in its capacity as a unit owner. Because provisions that may limit coverage are to be liberally interpreted in favor of the insured, and because PIIC failed to clearly argue that the endorsement negated 1801's coverage for actions it took as developer, the endorsement does not change the Court's analysis.

8

"CONDOMINIUMS – RESIDENTIAL (ASSOCIATION RISK ONLY)." PIIC maintains that this provision of the application shows that the parties never intended the Policies to cover risks beyond those of the Condominium Association itself. That point might have some force if the Policies themselves had included language indicating that the risk assumed was limited to "Association Risk Only,"[5] but it ignores the fact that the application is not part of either of the Policies. To the contrary, the Policies contain merger provisions explicitly stating that they "contain all the agreements between [1801] and [PIIC] concerning the insurance afforded." Doc. 25-2 p. 28. Simply put, PIIC cannot bring in evidence outside the four corners of the Policies in an effort to supply limitations that are nowhere included in the Policies themselves. *Lee v. Allstate Life Ins. Co.*, 361 Ill. App. 3d 970, 979, 838 N.E.2d 15, 23 (Ill. App. Ct. 2005) ("Parol evidence is not appropriate to interpret policy language that is facially unambiguous.").

PIIC cites three cases for its argument that the court should limit coverage, but all are distinguishable. Each involved an insured entity that operated multiple independent businesses, purchased insurance for only one of those businesses, and later sought coverage for a different business. *See Cooper v. RLI Ins. Co.*, No. CV 94-03617028, 1996 WL 367721, *4-5 (Conn. Super. Ct. June 3, 1996) (holding policy issued for a restaurant did not cover separate marina also operated by the restaurant owner); *Fidelity*

---

[5] The probative value of the point is, however, debatable (and therefore inadequate to support a grant of summary judgment on this issue). Its significance rests largely on the inference PIIC urges, namely that Mr. Jaeger completed this section of the application. PIIC Reply Brief, Doc. 33 at 1. But in its statement of undisputed facts, PIIC does not allege that this section was completed by Mr. Jaeger. Doc. 25 ¶ 11. And the schedule of hazards, besides classifying the risk as "association risk only," also identifies a "Class Code" and "Premium Basis" for the hazard. Doc. 25-6 p. 4. It is unlikely that PIIC allowed Mr. Jaeger to set the premium basis in 1801's application for insurance. Rather, the presence of these codes suggests that it is more likely that PIIC or its producing agent prepared the Schedule of Hazards page.

& *Deposit Co. of Maryland v. Charter Oak Fire Ins. Co.*, 66 Cal. App. 4th 1080, 1083-88 (Cal. App. 1998) (policy issued to insured "doing business as" a hotel in Arkansas did not cover townhomes the insured owned in California); *Steadfast Ins. Co. v. Dobbas*, No. 05-0632, 2008 WL 324023, *2, *7 (E.D. Cal. Feb. 5, 2008) (policy covering railroad contractor did not cover injuries caused by a bull from the insured's ranch). Here, by contrast, 1801 did not own and operate multiple separate businesses, only one of which was insured. Rather, 1801 was a single entity that performed multiple services as a part of its condominium development business—which was a named insured on the Policies.

Bearing in mind that, under Illinois law, insurance policy provisions are to be liberally construed in favor of coverage (*A-1 Roofing Co. v. Navigators Ins. Co.*, 2011 IL App (1st) 100878 ¶ 18, 958 N.E.2d 695, 697), and because PIIC admits that the Policies do not contain any "exclusion limiting the coverage provided 1801 to acts committed in the course of the activity described in the Business Description section of the Declarations" (Doc. 17 ¶ 20, Doc. 25 ¶ 1), the Court concludes that the Business Description in the Policies does not limit the Policies' coverage to activities of the condominium association.

### Count II – The *Irving* Lawsuit Includes Claims for Damage to Items Other Than 1801's "Work" or "Product."

PIIC alleges in Count II of the Second Amended Complaint that the Policies do not cover damage to 1801's "work" or "product," that the Metro North building itself constitutes 1801's "work" or "product," and therefore that PIIC need not defend the *Irving* lawsuit.

While it is true that the Policies contain exclusions for damage to 1801's "work" and "product," the *Irving* lawsuit contains allegations that 1801's conduct caused

property damage to "personal property housed in storage units," "vehicles parked in the common garage area," "floor rugs," and other personal property. Doc. 25-8 ¶¶ 20, 36. PIIC cannot claim that these items are 1801's "work" or "product." Therefore, regardless of whether the Metro North building itself constitutes 1801's "work" or "product," the Policies would cover 1801 for liability arising from the *Irving* plaintiffs' claims for damage to their personal property. *Lagestee-Mulder, Inc. v. Consolidated Ins. Co.*, 682 F.3d 1054, 1057 (7th Cir. 2012) ("Where the underlying suit alleges damage to the construction project *itself* because of a construction defect, there is no coverage. By contrast, where the complaint alleges that a construction defect damaged something *other* than the project, coverage exists."). The duty to defend arises if the underlying complaint alleges *any* theory under which coverage would be proper. *Wilkin*, 144 Ill.2d at 73, 578 N.E.2d at 930 (duty to defend applies if underlying complaint alleges any theory of liability covered by the insurance policy). So PIIC cannot succeed on the basis of Count II of the Second Amended Complaint.

### Count III – The *Irving* Lawsuit Includes Claims for Damages Caused By Non-Intentional Conduct.

In Count III of the Second Amended Complaint, PIIC alleges that certain *Irving* claims are not covered under the Policies because they include allegations of intentional conduct by 1801. PIIC claims that if 1801 acted intentionally, then there was no "occurrence" (defined in the Policies as an "accident"), and that the exclusion for intentional conduct applies. As noted above, however, one of the *Irving* plaintiffs' claims is that 1801 caused damage to private property by *negligently* failing to use ordinary care and skill in constructing the building. Doc. 25-8 ¶¶ 33-38. Therefore, 1801 may be liable to the *Irving* plaintiffs for damages caused by non-intentional conduct. Those

damages constitute an "occurrence" unaffected by the intentional conduct exclusion. *Nautilus Ins. Co. v. 1735 W. Diversey, LLC*, No. 10 C 425, 2011 WL 3176675, *4 (N.D. Ill. July 21, 2011) ("in order for a construction defect to be classified as an 'occurrence,' it must damage something other than the project itself"). The claims of intentional misconduct, then, do not eliminate PIIC's duty to defend, which (as noted above) exists if any theory of liability is within the scope of coverage.

### Count IV – Notice Was Not Timely.

Finally, PIIC argues in Count IV of its Second Amended Complaint that 1801 failed to provide notice of the *Irving* lawsuit "as soon as practicable," and that this failure excuses PIIC's duty to defend.

As an initial matter, 1801 claims that PIIC waived timely notice by failing to include that defense in its denial of coverage letter, citing *Di Leo v. U.S. Fid. & Guar. Co.*, 50 Ill. App. 2d 183, 200 N.E.2d 405 (Ill. App. Ct. 1964). *Di Leo* is clearly inapposite here because it stands for the proposition that "provisions of the policy . . . may be waived by the insurer by means of conduct which would lead the insured to believe the company did not intent [sic] to require compliance with the terms of the policy." *Id.* at 194, 200 N.E.2d at 410. This is a prospective waiver doctrine, intended to prevent insurers from lulling insureds into the belief that policy terms will not be enforced going forward. It has no bearing here, where 1801 had provided notice of the claim prior to the denial letter. That PIIC did not assert in its coverage denial letter that 1801's notice had been untimely did not retroactively absolve 1801 of its obligation to provide notice as soon as practicable. "The mere omission of a defense in a [denial] letter to a plan beneficiary does not constitute a waiver of the defense." *Loyola Univ. of Chicago v. Humana Ins. Co.*, 996 F.2d 895, 901 (7th Cir. 1993); *see also Di Leo*, 50 Ill.

App. 2d at 194, 200 N.E. 2d at 410 (discussing argument that "denial of liability operates as a waiver of all defenses based upon *subsequent* inattention to policy provisions") (emphasis added). 1801's waiver argument is meritless.

Turning to the substance of the notice argument, the Illinois Supreme Court has established that an insurance policy requiring notice "[a]s soon as practicable" means "within a reasonable time." *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 311, 856 N.E.2d 338, 343 (Ill. 2006). Where the parties agree on the material facts regarding notice, "the trial court may in appropriate circumstances decide the issue of reasonable notice as a matter of law." *Twin City Fire Ins. Co. v. Old World Trading Co.*, 266 Ill. App. 3d 1, 7, 639 N.E.2d 584, 588 (Ill. App. Ct. 1993); *see also Casualty Indem. Exch. v. Village of Crete*, 731 F.2d 457, 458 (7th Cir. 1984) ("if there are no disputed material facts, the court may in appropriate circumstances decide the issue of reasonable notice as a matter of law").

Here, there is no dispute as to the material facts relating to 1801's notice. The parties agree that the *Irving* lawsuit was filed on October 21, 2009, that counsel for 1801 appeared in the *Irving* litigation on October 30, 2009, and that the Second Amended Complaint in *Irving* was filed in August 2010. Doc. 17 ¶¶ 9-10; Doc. 25 ¶ 15. They further agree that Jaeger tendered the *Irving* action to PIIC on or about August 30, 2010, that PIIC denied coverage to Jaeger on November 22, 2010, that PIIC further denied coverage to 1801 on March 10, 2011, and that PIIC did not raise a late notice defense in its initial denial of coverage to 1801. Doc. 17 ¶¶ 11, 21-24. They also agree on the relevant language in the Policies.

13

Under Illinois law, the following factors may be considered in determining whether notice to an insurer has been provided within a reasonable time:

(1) the specific language of the policy's notice provision;

(2) the insured's sophistication in commerce and insurance matters;

(3) the insured's awareness of an event that may trigger insurance coverage;

(4) the insured's diligence in ascertaining whether coverage is available; and

(5) prejudice to the insurer."

*West American Ins. Co. v. Yorkville Nat. Bank*, 238 Ill.2d 177, 185-86, 939 N.E.2d 288, 293-94 (Ill. 2010). Each of these five factors, including prejudice to the insurer, is relevant but not individually determinative. *Farmers Auto. Ins. Ass'n v. Burton*, 2012 IL App (4th) 110289 ¶ 16, 967 N.E.2d 329, 334.

The delay in providing notice here was more than ten months and, as the Seventh Circuit recently observed (albeit in an unrelated context), "[t]en months exceeds any understanding of 'as soon as practicable.'" *Wheeler v. Wexford Health Sources, Inc.*, --- F.3d ----, 2012 WL 2999967, *1 (7th Cir. July 23, 2012). Indeed, Illinois courts have held notification delays much shorter than the ten month delay at issue here unreasonable as a matter of law. *See, e.g., Equity Gen. Ins. Co. v. Patis*, 119 Ill. App. 3d 232, 237-38 456 N.E.2d 348, 352 (Ill. App. Ct. 1983) (delay of four and a half months in reporting fire loss was unreasonable); *Illinois Valley Minerals Corp. v. Royal-Globe Ins. Co.*, 70 Ill. App. 3d 296, 300-01 388 N.E.2d 253, 256-57 (Ill. App. Ct. 1979) (six month delay unreasonable). 1801 cites cases finding delays greater than ten months to be reasonable, but each of the cases cited was impacted by mitigating circumstances not present here. *See West American*, 238 Ill.2d at 188, 939 N.E.2d at 295 (insurance agent advised insured that policy did not cover the litigation); *Pacific Employers Ins. Co. v. Clean Harbors*

*Envtl. Servs., Inc.*, No. 08-2180, 2011 WL 813905, *6 (N.D. Ill. Feb. 24, 2011) (evidence presented that insured's attorneys advised that there was no coverage under the excess policy in question).[6]

1801 claims that its delay of over ten months in notifying PIIC that a lawsuit had been filed was "highly reasonable," arguing that Jaeger is not experienced in insurance matters, that he did not realize that 1801 was a named insured under the Policies until he reviewed them ten months after the lawsuit was filed, and that PIIC did not suffer any prejudice. Doc. 18 p. 12-13. None of these arguments renders 1801's failure to provide notice to PIIC for over ten months reasonable.

As to the claim that Mr. Jaeger was simply an unsophisticated contractor unable to understand his potential obligations under the Policies, it is extraordinarily difficult to credit the assertion that the developer of a multimillion dollar condominium development on the north side of Chicago is so unschooled that he would not appreciate the need to review insurance policies that covered his company when that company was sued. But no matter. Whether Jaeger was savvy or not, 1801 admits that it was represented by counsel for claims involving the building since at least March 2008, so even if Jaeger himself was unsophisticated, he knew enough to engage attorneys to assist him with the claims asserted against 1801 by the *Irving* plaintiffs. Doc. 29 p. 3. When Jaeger raised

---

[6] 1801 inexplicably also cites *Brotherhood Mut. Ins. Co. v. Roseth*, 177 Ill. App. 3d 443, 532 N.E.2d 354 (Ill. App. Ct. 1988), a case in which notice of suit was provided a mere two days after a lawsuit was filed against the insured. The "occurrence" at issue in that suit had occurred some two years earlier, but this dispute concerns the timeliness of notice of the suit, not notice of the occurrence. In any event, the insured's delay in providing notice of occurrence was mitigated by the fact that the policy at issue was a homeowner's policy but the injuries occurred outside the home and the insureds had had no indication that liability would be incurred until filing of lawsuit. *Id.* at 450, 532 N.E.2d at 358.

the insurance issue with his counsel in 2010, they promptly made sure that he notified PIIC of his potential claim on the policy as well as that of 1801. Doc. 18 p. 12.

1801's position that that Jaeger did not realize the company was covered by the Policies until he reviewed them after he was personally named as a defendant in the suit justifies nothing and simply begs the question of why he did not review the Policies when the suit was filed originally (or at any other point over the next ten months). To the extent that 1801 is suggesting that Jaeger did not know of the Policies, no reasonable jury could credit that argument. As PIIC points out, in 2006, 1801 submitted a claim under the original Policy. Doc. 17 ¶ 27; Doc. 17-9; Doc. 18 p. 14. 1801 provides no explanation for why it knew it was a named insured in 2006, but did not know in 2009. Where an insured displays knowledge of a policy, a "convenient memory lapse cannot be considered a justifiable excuse for [a] lengthy delay if filing the notice of claim." *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1171 (insured's previous receipt of benefits under a policy "belies his contention that it was reasonable for him to forget about the policy"). Further, Jaeger is, as 1801 admits, the managing member and sole employee of 1801, so it is difficult to conceive that he had no involvement in the procurement of the Policies that include his company as a named insured.

Even if Jaeger's implicit claim to have forgotten that the Policies covered 1801 could be credited, it would still not excuse 1801's delayed notice because it was patently unreasonable for Jaeger not to inquire about coverage under the Policies until he was personally named as a defendant in the *Irving* lawsuit. He knew enough about the Policies to inquire about the scope of their coverage when he was personally named, so there is simply no basis to excuse him for failing to make a similar inquiry ten months

16

earlier when his company was sued. 1801 does not argue, or provide evidence, to suggest that Jaeger mistakenly believed that he was personally a named insured on the Policies; his connection to the Policies was plainly through his connection with 1801 and he therefore had ample basis to look into the question of whether the Policies covered the claims asserted against 1801 when the *Irving* suit was filed.

Finally, 1801's contention that PIIC suffered no prejudice as a result of its delay in providing notice of the *Irving* suit can be debated,[7] but even if correct, the absence of prejudice alone is insufficient to render 1801's actions "reasonable." The Illinois Supreme Court has held that "even if there is no prejudice to the insurer, a policyholder still must give reasonable notice according to the terms of the insurance policy." *Livorsi*, 222 Ill.2d at 316-17, 856 N.E.2d at 346; *see also Village of Crete*, 731 F.2d at 459 ("the absence of prejudice alone does not entitle the insured to coverage"). Though the *Livorsi* court found that "prejudice to the insurer is one factor to consider" when deciding whether an insured provided reasonable notice, it also made clear that lack of prejudice is insufficient to excuse late notice. *Livorsi*, 222 Ill.2d at 317, 856 N.E.2d at 346 ("once it is determined that the insurer did not receive reasonable notice of an occurrence or a lawsuit, the policyholder may not recover under the policy, regardless of whether the lack of reasonable notice prejudiced the insurer"). In *Livorsi*, the Illinois Supreme Court expressly rejected the rule adopted in some states that requires prejudice before untimely

---

[7] PIIC asserts that it was denied the ability "to conduct a timely and thorough investigation of [1801's] claim, locate and participate in the defense of [1801], and protect itself against unjustified claims." Doc. 33 p. 7. But because PIIC presumably would have denied 1801's claim even if notice had been timely, the late notice of the suit did not cause any disadvantage. *See Keystone Consol. Indus., Inc. v. Employers Ins. Co., of Wasau*, 470 F.Supp.2d 873, 884 (C.D. Ill. 2007) (presenting argument that insurer was not prejudiced by late notice where it would have denied claim anyway).

notice will bar recovery under an insurance policy, and this Court's does not have license to expand the contours of Illinois state law in contravention of that holding. *See Hollander v. Brown*, 457 F.3d 688, 692 (7th Cir. 2006) (federal courts shall not anticipate changes to state law).

Accordingly, in the absence of any reasonable justification for the lengthy delay in providing notice to PIIC of the claims asserted against 1801, the Court concludes that the 10 month delay was unreasonable as a matter of law and excuses PIIC from what would otherwise be its duty to defend the claims against 1801 in the *Irving* suit.[8]

\* \* \*

For all of these reasons, the Court grants PIIC's motion for summary judgment and enters judgment that PIIC has no duty to defend or indemnify 1801 for the allegations directed against 1801 in the *Irving* lawsuit.

Date: August 13, 2012

John J. Tharp, Jr.
United States District Judge

---

[8] None of the foregoing discussion is intended to comment on the timeliness of notice by Jaeger personally, or to suggest that PIIC has no duty to defend Jaeger personally in the *Irving* lawsuit. Mr. Jaeger is not a defendant in this action and there is no claim relating to him personally before the Court.